UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Karen Ann Young,

                        Plaintiff,

        v.

Commissioner of Social Security,

                        Defendant.

**Decision and Order**

18-CV-1241 HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 8, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 10, 11.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Supplemental Security Income under Title XVI of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous

work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

3

physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff challenges the ALJ's decision to formulate an RFC after rejecting every available medical opinion. The ALJ found that plaintiff had the severe impairments of degenerative disc disease with lumbar fusion; and diabetes mellitus. [26.] The ALJ then reviewed the record and accorded little weight to both a consultative examiner and a nurse practitioner. [31.] The ALJ concluded that plaintiff was capable of light work with occasional bending, stooping, crouching, crawling, and squatting; and with a prohibition on climbing ladders, ropes, or scaffolds. [29.] Plaintiff argues that the ALJ could not have reached this RFC without according at least some weight to the medical opinions in the record:

> In the instant case, the ALJ considered the opinions of Diane Cozzo, Plaintiff's treating nurse practitioner, and Dr. Hongbiao Liu, the consultative examiner. Tr. 28. He rejected both opinions, assigning them little weight. Tr. 28. The ALJ rejected Dr. Liu's opinions, because the "mild to moderate" limitations were vague. Tr. 28. He then rejected, NP Cozzo's opinion, alleging it was not supported by examination findings. Tr. 28. He then purported to rely on "all the evidence of record" to find Plaintiff could perform light work. Tr. 28. This amounted to using his lay opinion, to rely on the raw medical data for the RFC. *See Henderson*, 312 F. Supp. 3d at 371.
>
> Furthermore, even the available raw medical data was limited. Plaintiff had treated with Dr. Patel at Jefferson Medical for over ten years; however, these records are unavailable. Tr. 67, 234. Dr. Patel retired, and then the office moved and lost the records. Tr. 234. They subsequently closed, making these essentially unobtainable. Tr. 67, 234. Despite this, Dr. Patel had treated Plaintiff for her lumbar spine, prescribing her Lortabs. Tr. 277, 332. NP Cozzo began prescribing hydrocodone for her back pain in August 2017; however, because the treatment records no longer exist, the record did not contain much more evidence about Plaintiff's functional limitations. Most examinations on the record came from her gastroenterology treatment or emergency department visits for abdominal pain, both of which did not assess her back. Tr. 254, 264, 265, 267, 269, 271, 273, 275, 277, 279, 367. While her back was occasionally normal emergency department, the primary focus of those visits was here severe abdominal pain. Tr. 333, 259, 494. Meanwhile, the only examinations that specifically addressed her back were

4

abnormal. During Dr. Liu's examination Plaintiff was unable to heel and toe walk and could only squat 15 percent. Tr. 239. Straight leg raise was positive at 45 degrees both supine and sitting, and X-rays demonstrated degenerative spondylosis and two interbody cages post-surgery. Tr. 240, 243. Then NP Cozzo observed an abnormal back and spine examination with pain on extension and standing. Tr. 394. The record did not contain any other objective evidence on Plaintiff's back impairments.

(Dkt. No. 10-1 at 14–15; *see also* Dkt. No. 12 at 2.) The Commissioner responds by arguing that plaintiff is blurring the distinction between taking clinical records on their face, which is permitted, and crafting new opinions to interpret those records, which is not:

> The ALJ found Plaintiff retained an RFC for light work with limitations to no climbing ladders, ropes or scaffolds and only occasionally bending, stooping, crouching, crawling, and squatting (Tr. 26). The ALJ noted support for this RFC included that Plaintiff's Crohn's disease was stable, a reduced range of motion in her lumbar spine, difficulty squatting and a positive straight leg raise test, and 5/5 strength in the upper extremities (Tr. 25-28).
>
> Plaintiff contends that the ALJ gave little weight to the only two medical opinions in the record and there was no function-by-function assessment on which the ALJ could base his findings (Pl.'s Br. at 14-15). Relying on the evidence, however, instead of a specific opinion from either an acceptable or non-acceptable medical source, does not constitute interpreting the raw medical evidence (Pl.'s Br. at 15). It is the ALJ's duty to evaluate all of the evidence in determining the RFC. *See* 20 C.F.R. § 416.946(c); *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole"). Contrary to Plaintiff's contention, there was sufficient evidence here. Plaintiff had a consultative physical examination with Dr. Liu in May 2015, where he examined her back and her strength (Tr. 238-43). Dr. Raui's treatment notes are in the record related to Plaintiff's digestive issues, including Crohn's disease (Tr. 264-87). There is also records [sic] from numerous visits to the Sisters of Charity hospital over several years (Tr. 295-333, 400-500).

(Dkt. No. 11-1 at 7–8.)

The Commissioner has the better argument here. "If all of the evidence we receive, including all medical opinion(s), is consistent and there is sufficient evidence for us to determine whether you are disabled, we will make our determination or decision based on that evidence." 20

5

C.F.R. § 416.920b(a). "We will assess your residual functional capacity based on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). A consultative psychiatric examination on June 9, 2015 uncovered no limitations that would affect an RFC of light work. [251.] Plaintiff has Crohn's disease and was hospitalized for a few days in November 2015 with a flareup, but she improved and was authorized to return to work "as tolerated." [259.] A few months earlier, on September 15 and October 13, 2015, Dr. Abha Rani examined plaintiff and found normal results except for gastrointestinal tenderness consistent with a new onset of Crohn's disease. [267, 268.] The tenderness resolved when Dr. Rani examined plaintiff again on December 8, 2015, after the hospitalization. [272.] *Cf. Kirkham v. Comm'r*, No. 6:14-CV-0711 GTS, 2015 WL 3504889, at *8 (N.D.N.Y. June 3, 2015) (RFC of light work consistent with Crohn's disease); *Mosinski v. Astrue*, No. 09-CV-944 GLS/VEB, 2011 WL 2580353, at *6 (N.D.N.Y. Mar. 7, 2011) (same), *report and recommendation adopted*, No. 1:09-CV-944 GLS/VEB, 2011 WL 2580347 (N.D.N.Y. June 28, 2011). Another examination by Dr. Rani on January 19, 2016 showed that plaintiff's Crohn's disease was being managed by medication but that her diabetes was uncontrolled. [275.] By the time of another examination on August 3, 2017, Dr. Rani had to talk to plaintiff about the relation between noncompliance with medication and complications of Crohn's disease. [283.] As for the nurse practitioner whose checkboxes plaintiff argues should have received more consideration, NP Cozzo herself stated on August 4, 2017 why the ALJ was right to assign her opinion little weight: "[plaintiff] would benefit from functional capacity exam or IMA exam *as she is not well known to me* and—limited records." [297 (emphasis added).] *Cf. Wynn v. Comm'r*, 342 F. Supp. 3d 340, 346 (W.D.N.Y. 2018) ("Further, the Court finds that the ALJ's assignment of 'little weight' to NP Banse's July 2, 2014 opinion was reasonable. The opinion appears once in several pages of notes and is not accompanied by any supporting medical data."); *Truman v. Comm'r*, No. 3:14-CV-1195

6

ATB, 2015 WL 5512225, at *13 (N.D.N.Y. Sept. 17, 2015) (RFC affirmed where "the ALJ gave little weight to this check-box questionnaire because it was unaccompanied by any explanation, and Dr. Rahman had a very limited 'treatment continuum' with plaintiff"). As for other physical problems related to degenerative disc disease, a hospital visit on December 29, 2015 showed that plaintiff had a full and normal range of motion; intact cranial nerves; and full motor strength in all extremities. [460.] Plaintiff appeared in no acute distress that day. [460.] Another hospital visit on August 28, 2016 for eye swelling showed that plaintiff was "weight-bearing" and "able to fully bear weight." [484.] A hospital visit on May 6, 2017 for right shoulder pain showed that all of plaintiff's joints were normal except the right shoulder; and that plaintiff had no limitations in her range of motion. [489.] An examination on August 28, 2017 showed that plaintiff walked with a normal gait. [390.] An examination earlier that month, on August 4, 2017, was more specific: plaintiff walked with a normal gait for her age but had pain with extension and upon standing erect from forward flexion. [397.] Radiographic studies dated August 29, 2017, showed some spurring and degenerative changes in plaintiff's right shoulder. [445.] The Commissioner has cited other portions of the record as well, and the clinical notes as a whole show a consistent profile: no restrictions on activity that avoids potential problems with some shoulder pain and with some pain upon flexion and extension. *Cf. Tankisi v. Comm'r*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) ("The medical record in this case is quite extensive. Indeed, although it does not contain formal opinions on Tankisi's RFC from her treating physicians, it does include an assessment of Tankisi's limitations from a treating physician, Dr. Gerwig. Given the specific facts of this case, including a voluminous medical record assembled by the claimant's counsel that was adequate to permit an informed finding by the ALJ, we hold that it would be inappropriate to remand solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity.") (citations omitted). The record as a

7

whole also fails to uncover environmental concerns or limitations that drew the attention of the consultative examiner. The record here required no interpretation at the level that caused concern in *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999). *See id.* at 63 (ALJ decided on his own that plaintiff's "seizures were caused by a failure to take his medication" when no treatment provider said so). Plaintiff's clinical profile is consistent with the regulatory description of light work: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). Substantial evidence thus supported the ALJ's RFC, and more detailed medical source statements were not necessary.

Next, plaintiff argues that the ALJ crafted an RFC based on an incomplete record. "By rejecting every available opinion, the ALJ left a gap in the record requiring further development." (Dkt. No. 10-1 at 17.) "Furthermore, without Dr. Patel's earlier treatment of Plaintiff's back, medical opinion evidence is especially important. The undersigned also notes the ALJ rejected Dr. Liu's opinion because it did not contain a 'function-by-function assessment' of Plaintiff's abilities; he then proceeded to rely on an incomplete record that also contained no functional assessment of Plaintiff's ability to perform light work." (*Id.*) The Commissioner responds that the record "contained sufficient evidence on which the ALJ could assess Plaintiff's back impairment, even without Dr. Patel's records. Plaintiff correctly notes many of the exams that focused on Plaintiff's back pain were abnormal (Pl.'s Br. at 15). Abnormal, of course, does not equate with disability. Instead, the ALJ here acknowledged there were abnormal results from her back exams (Tr. 26-28). The ALJ recognized she had a reduced range of motion in her lumbar spine and had difficulty with squatting (Tr. 26). Indeed, the ALJ accounted for Plaintiff's abnormal back exams by including limitations related to the condition in the RFC such as limiting her to light work and postural

8

limitations (Tr. 27). There was sufficient medical here where the ALJ did not need to base his RFC on a particular medical opinion or functional assessment." (Dkt. No. 11-1 at 8.)

Again, the Commissioner has the better argument. As noted above, plaintiff underwent a number of examinations by Dr. Rani, who addressed her results in letters to Dr. Patel. Those examinations and others consistently showed that plaintiff had some extension and flexion pain and some shoulder pain. Those numerous examinations came as recently as 2017, and plaintiff has not adequately explained why records as much as 10 years older would show limits in movement and in lifting that examinations and 2016 and 2017 would not. *Cf. Loyd v. Comm'r*, No. 17-12589, 2018 WL 5118596, at *7 (E.D. Mich. Aug. 10, 2018) (generally, "'updated' medical records are to be accorded more weight than older ones"), *report and recommendation adopted*, No. 2:17-CV-12589, 2018 WL 4403420 (E.D. Mich. Sept. 17, 2018); *Salazar v. Colvin*, No. CV 13-0414 KG/WPL, 2014 WL 12796931, at *9 (D.N.M. Feb. 26, 2014) ("If the ALJ meant to conclude that these older medical records constituted more 'credible evidence' than Dr. Murphy's more recent examination records, he should have said so, and he should have explained why this was the case."), *report and recommendation adopted*, No. CV 13-0414 KG/WPL, 2014 WL 12796751 (D.N.M. Mar. 25, 2014). Under these circumstances, substantial evidence supported the ALJ's decision that the current record was adequate and that older records from Dr. Patel—records that plaintiff has conceded likely were lost anyway when Dr. Patel retired (Dkt. No. 10-1 at 15; Dkt. No. 12 at 2)—were not necessary.

### III. CONCLUSION

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 11) and denies plaintiff's cross-motion (Dkt. No. 10).

The Clerk of the Court is directed to close the case.

SO ORDERED.

__/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: March 13, 2020